**In the Interest of M.A., a Juvenile.**

No. 06–05–00136–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 17, 2006.

Decided July 19, 2006.

William T. Hughey, Law Offices of William T. Hughey, Marshall, for Appellant.

Al Davis, Asst. Dist. Atty., Marshall, for Appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

M.A., a twelve-year-old juvenile, appeals from the modification and disposition orders rendered by the County Court at Law of Harrison County. In its modification order, the trial court determined that M.A. violated the terms of his probation by engaging in delinquent conduct, to-wit, criminal mischief. Before the modification, M.A. had been adjudicated for three other misdemeanor offenses. The conduct forming the basis of the second adjudication occurred after the date of the first adjudication. In its disposition order, the trial court committed M.A. to the Texas Youth Commission (T.Y.C.) for an indeterminate

period of time, not to exceed the time when M.A. will be twenty-one years of age. M.A.'s sole issue on appeal is that the trial court abused its discretion in committing him to T.Y.C.

## BACKGROUND

M.A.'s initial contact with Harrison County juvenile authorities occurred on or about March 5, 2004. He was detained at that time for disrupting class by throwing chairs and threatening the responding officer. Before the adjudication hearing based on those incidents, M.A. was provided an opportunity to complete a boot camp program, which he did successfully. The trial court originally placed M.A. on six months deferred prosecution, which M.A. failed to successfully complete. Eventually, the trial court adjudicated M.A. of committing interruption of a public meeting, a misdemeanor, and placed M.A. on formal probation.

On or about April 26, 2005, M.A. was detained for violent disruption of class and resisting transport by the officer responding. The trial court adjudicated M.A. of committing delinquent conduct, to-wit, interruption of a public meeting and resisting arrest. M.A. was placed on probation with more stringent rules.

On or about August 24, 2005, M.A. again disrupted his class at school. After having attempted to defuse the situation by verbally admonishing M.A. and isolating him from the other students in his behavior modification class, Kevin Gray, M.A.'s teacher, sent M.A. to the assistant principal's office for failing to follow instructions. When M.A. did not cooperate with the assistant principal, the assistant principal informed M.A. she would be calling his juvenile probation officer. Although M.A. had not exhibited any physical violence up

to this point, M.A. became extremely upset on learning his juvenile probation officer would be informed. M.A. became violent and "stormed out" of the office. On his way out of the school, M.A. slammed a wooden door with such violence that it cracked. After damaging the door, M.A. hit a glass display case with his hand causing a glass panel to break. The principal testified the combined cost of the repairs were estimated to be at least $675.00.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

M.A. contends the trial court abused its discretion because commitment to T.Y.C. should be limited to the most severe offenders. M.A. cites Justice Schneider's concurring opinion in *In re J.P.*, for the proposition that T.Y.C. is the "most severe form of incarceration contemplated in the juvenile justice scheme" and "the Legislature has expressed its intent that the commitment be reserved for only serious juvenile offenders." *In re J.P.*, 136 S.W.3d 629, 634 (Tex.2004) (Schneider, J., concurring). M.A. also argues that a proper commitment to T.Y.C. generally occurs when the delinquent child involved has engaged in some type of violent activity, making such child potentially dangerous to the public, or where the child has been given a negative recommendation for probation. *See In re L.G.*, 728 S.W.2d 939, 945 (Tex.App.-Austin 1987, writ. ref'd n.r.e.). In addition, M.A. contends the ruling was arbitrary and unreasonable because the trial court failed to exhaust local services designed to address the medical needs of M.A.

 Provided the requisite number of adjudications have occurred,[1] the decision

---

1. *See* TEX. FAM.CODE ANN. §§ 54.04, 54.05(f), (k) (Vernon Supp.2005). Before the trial court's modification in this case, M.A. had been adju-

dicated on two different occasions of interruption of a public meeting. In addition, M.A. had been adjudicated of resisting arrest.

to modify a juvenile's probation, including the decision to commit the child to T.Y.C., is in the sound discretion of the trial court and can be reversed only on a finding that the trial court abused that discretion. *J.P.*, 136 S.W.3d at 632–33;[2] *In re H.G.*, 993 S.W.2d 211, 213 (Tex.App.-San Antonio 1999, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to guiding rules or principles. *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex.App.-Fort Worth 2002, no pet.).

According to M.A., the trial court abused its discretion because M.A. is not one of the most serious offenders and did not exhibit violence towards any other person. M.A. directs our attention to Gray's testimony that the original encounter was not of a physical nature, but was based on M.A.'s refusal to comply with several requests. After M.A. met with the assistant principal and was informed that his probation office would be called, M.A.'s demeanor changed, at which point he "stormed out" of the school causing damage to school property. At no point did M.A. attempt to cause harm to any individual.

Gray also testified M.A. was "pretty laid back, pretty good guy most of the time."

■ The Texas Family Code permits a trial court to decline third and fourth chances to a juvenile who has abused a second chance. *J.P.*, 136 S.W.3d at 633. Further, the State did introduce evidence of M.A. behaving in a violent manner toward others. M.A. had previously been adjudicated of resisting arrest. Although interruption of a public meeting is not necessarily violent in nature, M.A. was adjudicated of disrupting a meeting by throwing chairs and threatening the responding officer. In addition, M.A. had a history of violent and extremely disruptive behavior at the Willoughby Juvenile Center. The State introduced approximately eighteen incident reports, filed by detention employees while M.A. was in detention, detailing several acts of violence towards other residents and staff, as well as several violent threats. The trial court did not act arbitrarily or without reference to guiding principles.

■ According to M.A., the trial court also abused its discretion by failing to exhaust alternatives to T.Y.C. The trial

---

The first adjudication of interruption of a public meeting occurred before the conduct giving rise to the second adjudication for interruption of a public meeting and the adjudication for resisting arrest. M.A.'s conduct, criminal mischief, giving rise to the instant modification, occurred after the second adjudication.

2. The State cites *J.P.*, 136 S.W.3d at 634, for the proposition that the express findings required under subsection 54.04(f) are not required at modifications of probation. We note Section 54.05 has been amended since the conduct giving rise to the charge of criminal mischief occurred. *See* Act of May 25, 2005, 79th Leg., R.S., ch. 949 § 15, 2005 Tex. Gen. Laws 3198, 3205 (effective Sept. 1, 2005). The 2005 amendments added subsection (m) to Section 54.05, which requires the trial court to make additional findings when it commits a child to T.Y.C. *Id.* Because the conduct giving rise to the modification of M.A.'s probation occurred on August 24, 2005, before the effective dates of the 2005 amendments, the trial court may not have been required to make additional findings. *See id.; see also J.P.*, 136 S.W.3d at 634. The trial court, though, prudently made additional findings. The trial court found that (1) it was in the child's best interest to be placed outside the home; (2) reasonable efforts were made to prevent or eliminate the need to remove the child from the child's home and make it possible for the child to return home; and (3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. M.A. explicitly states he is not challenging the sufficiency of the evidence of the trial court's finding M.A. violated a term of his probation.

**392**

court found "[t]here is nothing else we have available on a local basis that will help him." Darren Forehand, M.A.'s probation officer, testified Harrison County Juvenile Services had no further programs available to attempt the rehabilitation of M.A. M.A. introduced evidence during the hearing that he has been diagnosed with "ADHD."[3] M.A.'s father and mother both testified that M.A.'s mother had recently changed employers, which had created problems obtaining M.A.'s medication. M.A. was not on his medication when he committed the criminal mischief. M.A.'s parents attributed M.A.'s most recent behavior to the lack of medication. In addition, Gray testified he assumed M.A. was not on his medication when he misbehaved. However, M.A.'s mother admitted M.A. was taking his medication when he committed the previously adjudicated misdemeanors. Forehand testified he did not believe M.A.'s behavior was any different when he was on his medication.

There was no evidence introduced at the hearing that Harrison County has alternative facilities which would meet M.A.'s needs.[4] M.A. argues on appeal that the trial court should have attempted to see how M.A. would behave in the Harrison County Juvenile Services' Long Term Program. The record does not indicate what services are available in the Harrison County Long–Term Services' Program, but the record does indicate the trial court was aware of the program. According to Forehand, the rehabilitative and counseling services at T.Y.C. are considerably more extensive than those available at Willoughby Juvenile Center. Forehand testified M.A.'s behavior in detention indicates that placement of M.A. in the long-term program would be very disrupting to the other resident members of the long-term program. M.A. had already attended boot camp ("the STAR program") and had exhausted other services available locally. Forehand testified there were not any additional services available locally to attempt to rehabilitate M.A. We cannot say the trial court abused its discretion in determining Harrison County lacked the services M.A. needs.

CONCLUSION

We are unable to conclude the trial court acted arbitrarily or without reference to guiding principles. The trial court was presented with evidence that M.A. had previously been adjudicated of committing three misdemeanors, including resisting arrest; had exhibited acts of violence towards other residents at the detention center as well as the staff of the detention center; and had exhausted all services available locally. The trial court did not abuse its discretion in committing M.A. to T.Y.C.

Accordingly, we affirm the modification and disposition orders of the trial court.

---

**3.** Attention Deficit Hyperactivity Disorder.

**4.** We note M.A. introduced a brochure from a counseling agency located in Dallas. However, no details concerning the program were introduced. Further, the trial court found that M.A. had refused to participate in counseling provided by Harrison County.