In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00006-CV


______________________________





IN THE MATTER OF J.T.B.





 


On Appeal from the 2nd Judicial District Court


Cherokee County, Texas


Trial Court No. J-03-088




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 After a troubled, five-year history entangled within the juvenile justice system, J.T.B.
appeals (1) a modification and disposition order revoking probation and sentencing him to ten years'
confinement. (2) J.T.B. contends: (1) his counsel was ineffective and (2) the juvenile court failed to
make specific findings required by Section 54.05(i) of the Texas Family Code. We affirm the trial
court's judgment. 

I. Factual and Procedural History 

 In order to fully understand the nature of this case, and the extent to which the juvenile court
attempted to rehabilitate this juvenile, we briefly provide J.T.B.'s disquieting history. 

 A. Strike One: In-Home Probation to Residential Placement

 After previously receiving deferred adjudication for stealing bicycles from Wal-Mart, and
completing probation for attempted theft of a Powerline BB pistol, twelve-year-old J.T.B. pled true
to violating Section 30.02(c)(2) of the Texas Penal Code (3) after he entered a habitation on August 31,
2003, and stole an X-Box video game and cell phone. On February 12, 2004, J.T.B. was placed on
probation in the custody of his mother for three years. The rules of all of his probations required that
he commit "no offense against the laws of this or any other state," "[r]emain in the home . . . from
6:00 p.m. until 6:00 a.m. seven days a week, unless . . . given permission," and "[p]erform 160 hours
of community service." The rules further provided that J.T.B. was to attend school as scheduled
without causing problems and obey the rules and regulations of the school. 

 Although J.T.B. affixed his signature to the rules averring that he understood them, the very
next day, his teacher advised the probation department that J.T.B. "[was] acting like a fool in school"
and threw papers after the teacher asked him about his progress on an assignment. When J.T.B. was
informed the school was going to call the probation department, he said that he "[didn't] give a f***." 
The probation officer filed an application for directive to apprehend and was directed to take J.T.B.
into custody and detain him in the Anderson County Juvenile Detention Center for no more than ten
working days. This was the first of many detention orders entered throughout the next few years. 

 In March 2004, the first petition to modify disposition was filed, citing the February 13
incident and two other incidents which involved J.T.B. hitting another boy "in the face with a closed
fist" and "assaulting . . . a public servant of the Jacksonville Texas Public School system; hitting her
in the left shoulder and arm with a closed fist." After a hearing, the juvenile court ordered that J.T.B.
be placed on probation at Azleway Boys' Ranch in Tyler, Texas. In addition to the rules of probation
already recited in the first order, the court required J.T.B. to obey the instructions and rules of the
residential placement program and prohibited J.T.B. from participating in gang activity. 

 B. Strike Two: Another Residential Placement 

 On October 4, 2004, the Azleway Boys' Ranch program director contacted the probation
department and advised that J.T.B. was being discharged due to pending sexual assault charges. The
charges were later dropped, and J.T.B. was allowed to return home and enroll in Rusk Junior High
School. However, J.T.B. "got kicked out of regular school," was placed in an alternative education
program, and was suspended from that program three times. He also took his grandmother's car for
a joyride and evaded arrest after a peace officer attempted to stop him. An evaluation completed by
Trinity Counseling Associates of East Texas revealed that J.T.B. admitted that he was a member of
the Northside Bloods gang in Jacksonville and that the joyride was "an effort to show off for gang
members at the Alternative Education Program." 

 Citing these alleged offenses, subsequent petitions to modify disposition resulted in further
orders of detention, and on August 4, 2005, a modification order was entered placing J.T.B. in the
Southwest Key Program residential placement facility. In addition to the same rules of probation
implemented previously, J.T.B. was to obey the rules of the Southwest Key Program, participate in
electronic monitoring, and attend and complete all juvenile service programs. 

 C. Strike Three: Indefinite Juvenile Commitment to TYC

 The next petition to modify disposition, filed in January 2007, alleged that J.T.B.: (1) was
suspended from school for eight days from October to December 2006; 2) failed to meet curfew;
3) had twice entered the property of Greg Ray without consent; 4) fraudulently attempted to possess
or obtain hydrocodone by adding the words "Hydrocoden 600mg" to a prescription form that had
already been filled out by his doctor; and 5) with the specific intent to commit the offense of sexual
assault, placed a girl:

 over his shoulders, carried her to the bedroom, placed her on a bed, removed her
pants and underwear, lowered his shorts and took a position over [her], which
amounted to more than mere preparation that tended but failed to effect the
commission of the offense intended.


 A summary filed by the Cherokee County Juvenile Department listed eight violations of court
orders from February 2004 to March 2007, unsuccessful discharges from the Azleway Boys' Ranch
and Project Aspect Program, and unsuccessful completion of intensive probation and electronic
monitoring. (4) Since J.T.B. had been referred to the probation department, he had been "placed in
detention nine different times totaling 231 days," and had been arrested six times. 

 On April 26, 2007, the juvenile court cited J.T.B.'s history and procedural background, found
that he entered Ray's property in violation of Section 30.05 of the Texas Penal Code, (5) violated
Section 481.129 of the Texas Health and Safety Code (6) by attempting to fraudulently obtain
hydrocodone, was suspended from school, violated curfew, and ordered him committed to TYC. (7) 

 D. Strike Out: Commitment to TYC/TDCJ

 On May 5, 2008, a petition for determinate sentencing alleged J.T.B. had shot another person
with a firearm on April 21, prior to the juvenile court's order committing J.T.B. to TYC. After
waiver of a jury trial and right to appeal on the issue, the juvenile court found J.T.B. had committed
the offense and sentenced J.T.B. to

 ten (10) years confinement with the first portion of the confinement being in the
Texas Youth Commission and the remaining confinement to be served in the Texas
Department of Criminal Justice, Institutional Division; however, this confinement is
suspended and [J.T.B.] shall be placed on probation and committed to the
supervision of the Juvenile Probation Office of Cherokee County, Texas for ten (10)
years, and the said supervision will be transferred to Cherokee County Adult
Probation for the remainder of the ten year period upon approval.


 A final petition to modify disposition resulted in the court revoking probation and instituting
the sentence imposed above. The juvenile court found J.T.B. violated the conditions of his probation
because he was issued a citation for minor in possession of a tobacco product, violated curfew on
June 28, 29, and July 5, 2008, tested positive for marihuana and benzodiapine in a random urinalysis,
and was unsuccessfully discharged from Summer II Program. In its order, the court did not find that
J.T.B. failed to perform community service hours or that he stole money from Mike's Muffler Shop
as alleged in the modification for disposition. 

 Nevertheless, J.T.B. contends "the result of the modification hearing was unreliable because
[he] received ineffective assistance of counsel," when counsel failed to object to hearsay evidence
related only to the theft allegation at Mike's Muffler Shop. The second issue on appeal deals with
language in Section 54.05(i) of the Texas Family Code, requiring the court to "specifically state its
reasons for modifying the disposition." We affirm. 

II. Standard of Review

 The juvenile court has broad discretion to select the appropriate form of detention for
juvenile offenders. To commit the juvenile to TYC, the court must make findings that: (1) it is in
the child's best interest to be placed outside the home; (2) reasonable efforts were taken to prevent
the need to remove the child from the home and make it possible to return home; and (3) the child
did not receive the quality of care and level of support and supervision needed to meet the conditions
of probation. (8) Tex. Fam. Code Ann. §§ 54.04(i), 54.05(m) (Vernon 2008); In re J.R.C., 236 S.W.3d
870, 873 (Tex. App.--Texarkana 2007, no pet.); see also In re J.P., 136 S.W.3d 629, 630 (Tex.
2004). Thus, we do not disturb a juvenile court's disposition order in the absence of an abuse of
discretion. In re K.H., 169 S.W.3d 459, 462 (Tex. App.--Texarkana 2005, no pet.); In re K.J.N.,
103 S.W.3d 465, 465-66 (Tex. App.--San Antonio 2003, no pet.); In re A.E.E., 89 S.W.3d 250, 256
(Tex. App.--Texarkana 2002, no pet.). 

 An abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without
reference to guiding rules and principles. In re M.A., 198 S.W.3d 388, 391 (Tex. App.--Texarkana
2006, no pet.). This standard requires that we "view the evidence in the light most favorable to the
trial court's ruling," affording almost total deference to findings of historical facts that are supported
by the record. In re J.G., 195 S.W.3d 161, 187 (Tex. App.--San Antonio 2006, no pet.). When the
resolution of factual issues does not turn on an evaluation of credibility or demeanor, we review
de novo the trial court's determination of the applicable law, as well as its application to the facts. 
Id. A trial court does not abuse its discretion if some evidence supports its decision. Furr's
Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 379 (Tex. 2001); see also Estrello v. Elboar, 965
S.W.2d 754, 758 (Tex. App.--Fort Worth 1998, no pet.); Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.--Houston [1st Dist.] 1993, writ denied). 

III. Analysis 

 A. Ineffective Assistance Allegation 

 J.T.B. first contends his counsel was ineffective because he failed to object to hearsay
evidence. J.T.B. bears the burden of proof on this matter by a preponderance of the evidence.
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); see Goodspeed v. State, 187 S.W.3d
390, 392 (Tex. Crim. App. 2005). Any allegation of his counsel's ineffectiveness must be firmly
founded in the record. Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d at 813; Cannon v.
State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). 

 We apply the two-pronged Strickland test handed down by the United States Supreme Court
to determine whether J.T.B. received ineffective assistance of counsel. Strickland v. Washington,
466 U.S. 668 (1984). The first prong requires J.T.B. to show counsel's performance fell below an
objective standard of reasonableness when considering prevailing professional norms. Id. at 687-88. 
To meet the second prong of the Strickland test, J.T.B. must show that the deficient performance
damaged his defense such that there is a reasonable probability the result of the trial would have been
different. Id.; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). Failure to satisfy either
prong of the Strickland test is fatal. Jaubert v. State, 74 S.W.3d 1, 9 (Tex. Crim. App. 2002). Thus,
we need not examine both Strickland prongs if one cannot be met. Strickland, 466 U.S. at 697. 

 J.T.B. complains that trial counsel did not object to the testimony of Officer Anthony Forson
concerning the October 8, 2008, incident at the muffler shop when Forson testified Officer Eric
Dawes told him that he thought J.T.B. was in possession of tobacco products. It is not clear that this
evidence is hearsay. A police officer's testimony is not hearsay when it is offered for the purpose
of explaining how a defendant became a suspect, rather than for the truth of the matter asserted. 
Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). In addition, an officer's testimony
is not hearsay when it is admitted, not for the truth, but to establish the course of events and
circumstances leading to a defendant's arrest. Thornton v. State, 994 S.W.2d 845, 854 (Tex.
App.--Fort Worth 1999, pet. ref'd) (citing Reed v. State, 794 S.W.2d 806, 809 (Tex. App.--Houston
[14th Dist.] 1990, pet. ref'd)). Additionally, since J.T.B. admitted possession of tobacco on that date
it appears the defense made a strategic decision not to contest this issue. Counsel's performance in
this regard was not deficient. 

 J.T.B. alleges his counsel failed to present evidence that a GPS device placed him at some
other location at the time of the incident at Mike's Muffler Shop, but the record shows such evidence
was presented by J.T.B. in his testimony. J.T.B. also alleges that counsel was deficient in failing to
object to a statement by J.T.B.'s girlfriend at the muffler shop. However, nothing in the record
suggests J.T.B.'s sentence was due to a theft allegedly occurring at Mike's Muffler Shop. In fact, the
juvenile court did not base its decision to revoke probation based on this allegation. Therefore, as
to the incident occurring at the muffler shop, J.T.B. cannot meet the second prong of the Strickland
test. In view of this juvenile's extensive delinquency history, there is no indication of a reasonable
probability the juvenile court would have imposed a different sentence had counsel objected to this
alleged hearsay evidence. From the record, it appears the trial court had already exhausted the lesser
alternative sanctions. The trial court aptly observed that J.T.B. had "worn the system out." This
point of error is overruled. 

 B. Specific Reasons for Sentence 

 J.T.B. next complains that the court's reasons for committing him to TYC are not sufficiently
specific. (9) A modification order can provide for commitment to TYC if "(1) the original disposition
was for conduct constituting a felony or multiple misdemeanors, and (2) the court finds the child
violated a reasonable and lawful order of the court." (10) J.P., 136 S.W.3d at 630-31; see Tex. Fam.
Code Ann. § 54.05(f) (Vernon 2008). The juvenile court "shall specifically state in the order its
reasons for modifying the disposition." Tex. Fam. Code Ann. § 54.05(i) (Vernon 2008). The
statutory recitals listed in Section 54.05(m) are not, by themselves, specific enough to meet Section
54.05(i) requirements. In re J.T.H., 779 S.W.2d 954, 959 (Tex. App.--Austin 1989, no writ)
(discussing Section 54.04). As long as the record supports the specific findings made by the court,
its findings will not be disturbed. In re S.A.G., No. 04-06-00503-CV, 2007 WL 748674, at *2 (Tex.
App.--San Antonio Mar. 14, 2007, no pet.) (mem. op.) (citing In re E.D., 127 S.W.3d 860, 864
(Tex. App.--Austin 2004, no pet.)). The violation of one condition of probation is sufficient to
support a trial court's order modifying a juvenile's disposition. Id. at *3. 

 In addition to the statutory language and "find[ings] that within the period of probation said
child has violated the conditions," the order also stated J.T.B. was "in need of rehabilitation," and
modification was required "for the protection of the public and the child." The order also
incorporated "Exhibit 1," which stated:


 The child has a history of referrals for violations at school.
 The Department has attempted disposition in the home in the past, and the child continues
to commit offenses.
 It does not appear that disposition in the home will have any success in rehabilitating the
child.
 The supervision of the parents in the home is not sufficient to prevent the child from his/her
admitted gang involvement and repeated offenses.
 The child was previously placed on probation by the Court.
 The child and/or family was previously referred to the following community, court,
educational, counseling, or psychological programs: Summer II Program, GPS Monitoring,
Intensive Supervision Program, Community Service Restitution, Project Aspect, Why Try,
Electronic Monitoring, Prevent Day, Southwest Key RTC and Azleway Boys' Ranch RTC.
 The nature of the offense and/or circumstances in the child's home necessitates removal of
the child from the home. 



We find the order more than sufficient to meet the requirements of Section 54.05(i). 

 Thus, if some evidence supports these findings, they cannot be disturbed on appeal. The
sufficiency of the evidence to support these findings is not challenged in this appeal. In both its oral
pronouncement and written order, the juvenile court found that J.T.B. possessed tobacco as a minor,
violated curfew, tested positive for marihuana and benzodiapine, and was unsuccessfully discharged
from the Summer II Program. Jacksonville City Judge Pete Menefee brought J.T.B.'s court file and
testified he had a pending ticket for minor in possession of tobacco in his court. The curfew
violation was supported by Kyle Dezern, employee of the Cherokee County Juvenile Probation
Department, who testified that J.T.B.'s GPS monitor confirmed violations on the alleged dates. Terri
Arnold, program coordinator for the summer program, testified that he only attended for one day and
had to be removed from the program due to inappropriate behavior. J.T.B. also admitted he
possessed the tobacco, violated curfew, tested positive for benzodiapine, "might have been dirty" for
marihuana, and was discharged from the summer program. Additionally, the trial court took judicial
notice of the entire clerk's record, which further supports the additional findings made in Exhibit 1. 
We find no abuse of discretion in the trial court's judgment. 

IV. CONCLUSION

 We affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: May 26, 2009

Date Decided: May 27, 2009

1. This case was transferred to this Court from the Twelfth District Court of Appeals in Tyler
as a part of the Texas Supreme Court's docket equalization program. We are not aware of any
conflict between the precedent of the Tyler Court with precedent of this Court on any issue relevant
to this appeal. See Tex. R. App. P. 41.3. 
2. The confinement was to be served with the Texas Youth Commission (TYC) with possible
transfer to the Texas Department of Criminal Justice-Institutional Division (TDCJ). 
3. See Tex. Penal Code Ann. § 30.02(c)(2) (Vernon 2003). 
4. The report indicated that community service assigned in 2004 was completed in July 2006. 
5. See Tex. Penal Code Ann. § 30.05 (Vernon Supp. 2008).
6. See Tex. Health & Safety Code Ann. § 481.129 (Vernon 2003). 
7. The juvenile court further placed J.T.B. in the Anderson County Juvenile Detention Center
pending transportation to TYC.
8. These statutory findings are included within the appealed order. 
9. The bulk of J.T.B.'s argument on this issue complains the order "is unclear specifically what
caused the trial judge to enter the order modifying [J.T.B.'s] probation." We disagree.
10. In addition to the original felony charge for entering the home of Walter Lee Stockstill with
intent to commit theft, the order complained of states there "was also a finding of a Deadly Weapon
on the 9th day of June, 2008 when the Respondent entered his plea of True to the allegations of
Aggravated Assault with a Deadly Weapon." 


: 0.416667in">            Siler further argues that the trial court erred by failing to follow a plea agreement and by
failing to compel the State to abide by the agreement. As mentioned above, the record affirmatively
shows that no plea agreement existed and that an open plea was accepted.
            Siler also contends the trial court erred by sentencing him without first obtaining a
presentence investigative (PSI) report under Article 42.12, Section 9(i) of the Texas Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 42.12, § 9(i) (Vernon Supp. 2004–2005). 
That section explains the type of information that must be provided in a PSI report when a defendant
appears to have a mental impairment, as observed by the trial court or on suggestion of a party. The
language quoted by Siler in his brief, and on which he relies as showing that a PSI is mandatory if
mental impairment is observed, is no longer in the statute.


 The provision in effect at the time of
Siler's trial no longer makes a PSI report mandatory in that circumstance:
A presentence investigation conducted on any defendant convicted of a felony
offense who appears to the judge through its own observation or on suggestion of a
party to have a mental impairment shall include a psychological evaluation which
determines, at a minimum, the defendant's IQ and adaptive behavior score. The
results of the evaluation shall be included in the report to the court as required by
Subsection (a) of this section.

Id. The effect of the amendment was to remove language indicating a PSI "shall be" prepared when
a felony offender appears to suffer from mental impairment. The revised language provides that, if
the trial court in its discretion orders a PSI report to be prepared, the report must contain a
psychological evaluation of the defendant if said defendant has exhibited mental impairment. 
Holloman v. State, 942 S.W.2d 773, 776 (Tex. App.—Beaumont 1997, no pet.). Further, the right
to have a PSI report prepared before sentencing in a felony case can be forfeited by inaction. Id.;
Wright v. State, 873 S.W.2d 77, 83 (Tex. App.—Dallas 1994, pet. ref'd).


 Therefore, for both of
these reasons, the trial court did not err in sentencing Siler without previously having a PSI report
prepared.
            Siler also argues the trial court erred by failing to grant him a hearing on his motion for new
trial and denying the motion. A defendant is entitled to a hearing on his or her motion for new trial,
and a trial court abuses its discretion by failing to hold a hearing, if the motion raises matters which
are not determinable from the record and on which relief may be available. Reyes v. State, 849
S.W.2d 812, 816 (Tex. Crim. App. 1993); Callahan v. State, 937 S.W.2d 553, 560 (Tex.
App.—Texarkana 1996, no pet.). In this case, the grounds raised are connected with the present
argument that there was a plea agreement that should have been honored by the State and that
counsel was ineffective for failing to object to its absence. This is, however, directly contrary to
Siler's own statements at the plea proceeding that he was pleading no contest in an open plea. The
trial court questioned Siler extensively about this intention, and ultimately the trial judge left the
courtroom for several minutes so that Siler and trial counsel could confer about the dangers of Siler's
proposed course of action. In the written admonishments, language that would have run all
sentences concurrently was struck out and replaced with the phrase "Open Plea." There was
considerable discussion about the plea, and the trial court specifically asked Siler if he understood
that there was no plea agreement and that he was therefore exposed to the entire punishment range. 
Under these facts, the trial court did not err by failing to conduct a hearing on the motion for new
trial.
            We have reviewed the record. We agree with appellate counsel that there is no reversible
error in this case and that the arguable issues raised are not meritorious. We therefore grant her
motion to withdraw as counsel.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 6, 2005
Date Decided:             August 16, 2005

Do Not Publish