

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00006-CV
_____


IN THE MATTER OF J.T.B.


On Appeal from the 2nd Judicial District Court
Cherokee County, Texas
Trial Court No. J-03-088


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

After a troubled, five-year history entangled within the juvenile justice system, J.T.B. appeals[1] a modification and disposition order revoking probation and sentencing him to ten years' confinement.[2] J.T.B. contends: (1) his counsel was ineffective and (2) the juvenile court failed to make specific findings required by Section 54.05(i) of the Texas Family Code. We affirm the trial court's judgment.

## I.      Factual and Procedural History

In order to fully understand the nature of this case, and the extent to which the juvenile court attempted to rehabilitate this juvenile, we briefly provide J.T.B.'s disquieting history.

### A.      Strike One:    In-Home Probation to Residential Placement

After previously receiving deferred adjudication for stealing bicycles from Wal-Mart, and completing probation for attempted theft of a Powerline BB pistol, twelve-year-old J.T.B. pled true to violating Section 30.02(c)(2) of the Texas Penal Code[3] after he entered a habitation on August 31, 2003, and stole an X-Box video game and cell phone. On February 12, 2004, J.T.B. was placed on

---

[1]This case was transferred to this Court from the Twelfth District Court of Appeals in Tyler as a part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict between the precedent of the Tyler Court with precedent of this Court on any issue relevant to this appeal. *See* TEX. R. APP. P. 41.3.

[2] The confinement was to be served with the Texas Youth Commission (TYC) with possible transfer to the Texas Department of Criminal Justice-Institutional Division (TDCJ).

[3]*See* TEX. PENAL CODE ANN. § 30.02(c)(2) (Vernon 2003).

probation in the custody of his mother for three years. The rules of all of his probations required that he commit "no offense against the laws of this or any other state," "[r]emain in the home . . . from 6:00 p.m. until 6:00 a.m. seven days a week, unless . . . given permission," and "[p]erform 160 hours of community service." The rules further provided that J.T.B. was to attend school as scheduled without causing problems and obey the rules and regulations of the school.

Although J.T.B. affixed his signature to the rules averring that he understood them, the very next day, his teacher advised the probation department that J.T.B. "[was] acting like a fool in school" and threw papers after the teacher asked him about his progress on an assignment. When J.T.B. was informed the school was going to call the probation department, he said that he "[didn't] give a f***." The probation officer filed an application for directive to apprehend and was directed to take J.T.B. into custody and detain him in the Anderson County Juvenile Detention Center for no more than ten working days. This was the first of many detention orders entered throughout the next few years.

In March 2004, the first petition to modify disposition was filed, citing the February 13 incident and two other incidents which involved J.T.B. hitting another boy "in the face with a closed fist" and "assaulting . . . a public servant of the Jacksonville Texas Public School system; hitting her in the left shoulder and arm with a closed fist." After a hearing, the juvenile court ordered that J.T.B. be placed on probation at Azleway Boys' Ranch in Tyler, Texas. In addition to the rules of probation already recited in the first order, the court required J.T.B. to obey the instructions and rules of the residential placement program and prohibited J.T.B. from participating in gang activity.

**B. Strike Two: Another Residential Placement**

On October 4, 2004, the Azleway Boys' Ranch program director contacted the probation department and advised that J.T.B. was being discharged due to pending sexual assault charges. The charges were later dropped, and J.T.B. was allowed to return home and enroll in Rusk Junior High School. However, J.T.B. "got kicked out of regular school," was placed in an alternative education program, and was suspended from that program three times. He also took his grandmother's car for a joyride and evaded arrest after a peace officer attempted to stop him. An evaluation completed by Trinity Counseling Associates of East Texas revealed that J.T.B. admitted that he was a member of the Northside Bloods gang in Jacksonville and that the joyride was "an effort to show off for gang members at the Alternative Education Program."

Citing these alleged offenses, subsequent petitions to modify disposition resulted in further orders of detention, and on August 4, 2005, a modification order was entered placing J.T.B. in the Southwest Key Program residential placement facility. In addition to the same rules of probation implemented previously, J.T.B. was to obey the rules of the Southwest Key Program, participate in electronic monitoring, and attend and complete all juvenile service programs.

**C. Strike Three: Indefinite Juvenile Commitment to TYC**

The next petition to modify disposition, filed in January 2007, alleged that J.T.B.: (1) was suspended from school for eight days from October to December 2006; 2) failed to meet curfew; 3) had twice entered the property of Greg Ray without consent; 4) fraudulently attempted to possess

4

or obtain hydrocodone by adding the words "Hydrocoden 600mg" to a prescription form that had already been filled out by his doctor; and 5) with the specific intent to commit the offense of sexual assault, placed a girl:

> over his shoulders, carried her to the bedroom, placed her on a bed, removed her pants and underwear, lowered his shorts and took a position over [her], which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

A summary filed by the Cherokee County Juvenile Department listed eight violations of court orders from February 2004 to March 2007, unsuccessful discharges from the Azleway Boys' Ranch and Project Aspect Program, and unsuccessful completion of intensive probation and electronic monitoring.[4] Since J.T.B. had been referred to the probation department, he had been "placed in detention nine different times totaling 231 days," and had been arrested six times.

On April 26, 2007, the juvenile court cited J.T.B.'s history and procedural background, found that he entered Ray's property in violation of Section 30.05 of the Texas Penal Code,[5] violated Section 481.129 of the Texas Health and Safety Code[6] by attempting to fraudulently obtain hydrocodone, was suspended from school, violated curfew, and ordered him committed to TYC.[7]

---

[4]The report indicated that community service assigned in 2004 was completed in July 2006.

[5]*See* TEX. PENAL CODE ANN. § 30.05 (Vernon Supp. 2008).

[6]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.129 (Vernon 2003).

[7]The juvenile court further placed J.T.B. in the Anderson County Juvenile Detention Center pending transportation to TYC.

5

**D.     Strike Out:  Commitment to TYC/TDCJ**

On May 5, 2008, a petition for determinate sentencing alleged J.T.B. had shot another person with a firearm on April 21, prior to the juvenile court's order committing J.T.B. to TYC.  After waiver of a jury trial and right to appeal on the issue, the juvenile court found J.T.B. had committed the offense and sentenced J.T.B. to

> ten (10) years confinement with the first portion of the confinement being in the Texas Youth Commission and the remaining confinement to be served in the Texas Department of Criminal Justice, Institutional Division; however, this confinement is suspended and [J.T.B.] shall be placed on probation and committed to the supervision of the Juvenile Probation Office of Cherokee County, Texas for ten (10) years, and the said supervision will be transferred to Cherokee County Adult Probation for the remainder of the ten year period upon approval.

A final petition to modify disposition resulted in the court revoking probation and instituting the sentence imposed above.  The juvenile court found J.T.B. violated the conditions of his probation because he was issued a citation for minor in possession of a tobacco product, violated curfew on June 28, 29, and July 5, 2008, tested positive for marihuana and benzodiapine in a random urinalysis, and was unsuccessfully discharged from Summer II Program.  In its order, the court did not find that J.T.B. failed to perform community service hours or that he stole money from Mike's Muffler Shop as alleged in the modification for disposition.

Nevertheless, J.T.B. contends "the result of the modification hearing was unreliable because [he] received ineffective assistance of counsel," when counsel failed to object to hearsay evidence related only to the theft allegation at Mike's Muffler Shop.  The second issue on appeal deals with

6

language in Section 54.05(i) of the Texas Family Code, requiring the court to "specifically state its reasons for modifying the disposition." We affirm.

## II. Standard of Review

The juvenile court has broad discretion to select the appropriate form of detention for juvenile offenders. To commit the juvenile to TYC, the court must make findings that: (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts were taken to prevent the need to remove the child from the home and make it possible to return home; and (3) the child did not receive the quality of care and level of support and supervision needed to meet the conditions of probation.[8] TEX. FAM. CODE ANN. §§ 54.04(i), 54.05(m) (Vernon 2008); *In re J.R.C.*, 236 S.W.3d 870, 873 (Tex. App.—Texarkana 2007, no pet.); *see also In re J.P.*, 136 S.W.3d 629, 630 (Tex. 2004). Thus, we do not disturb a juvenile court's disposition order in the absence of an abuse of discretion. *In re K.H.*, 169 S.W.3d 459, 462 (Tex. App.—Texarkana 2005, no pet.); *In re K.J.N.*, 103 S.W.3d 465, 465–66 (Tex. App.—San Antonio 2003, no pet.); *In re A.E.E.*, 89 S.W.3d 250, 256 (Tex. App.—Texarkana 2002, no pet.).

An abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *In re M.A.*, 198 S.W.3d 388, 391 (Tex. App.—Texarkana 2006, no pet.). This standard requires that we "view the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical facts that are supported

---

[8]These statutory findings are included within the appealed order.

by the record.  *In re J.G.*, 195 S.W.3d 161, 187 (Tex. App.—San Antonio 2006, no pet.).  When the resolution of factual issues does not turn on an evaluation of credibility or demeanor, we review de novo the trial court's determination of the applicable law, as well as its application to the facts. *Id.*  A trial court does not abuse its discretion if some evidence supports its decision.  *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 379 (Tex. 2001); *see also Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex. App.—Fort Worth 1998, no pet.); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

## III.   Analysis

### A.      Ineffective Assistance Allegation

J.T.B. first contends his counsel was ineffective because he failed to object to hearsay evidence.  J.T.B. bears the burden of proof on this matter by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  Any allegation of his counsel's ineffectiveness must be firmly founded in the record.  *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether J.T.B. received ineffective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong requires J.T.B. to show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Id.* at 687–88.

To meet the second prong of the *Strickland* test, J.T.B. must show that the deficient performance damaged his defense such that there is a reasonable probability the result of the trial would have been different. *Id.*; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). Failure to satisfy either prong of the *Strickland* test is fatal. *Jaubert v. State*, 74 S.W.3d 1, 9 (Tex. Crim. App. 2002). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

J.T.B. complains that trial counsel did not object to the testimony of Officer Anthony Forson concerning the October 8, 2008, incident at the muffler shop when Forson testified Officer Eric Dawes told him that he thought J.T.B. was in possession of tobacco products. It is not clear that this evidence is hearsay. A police officer's testimony is not hearsay when it is offered for the purpose of explaining how a defendant became a suspect, rather than for the truth of the matter asserted. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). In addition, an officer's testimony is not hearsay when it is admitted, not for the truth, but to establish the course of events and circumstances leading to a defendant's arrest. *Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *Reed v. State*, 794 S.W.2d 806, 809 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd)). Additionally, since J.T.B. admitted possession of tobacco on that date it appears the defense made a strategic decision not to contest this issue. Counsel's performance in this regard was not deficient.

J.T.B. alleges his counsel failed to present evidence that a GPS device placed him at some other location at the time of the incident at Mike's Muffler Shop, but the record shows such evidence

9

was presented by J.T.B. in his testimony. J.T.B. also alleges that counsel was deficient in failing to object to a statement by J.T.B.'s girlfriend at the muffler shop. However, nothing in the record suggests J.T.B.'s sentence was due to a theft allegedly occurring at Mike's Muffler Shop. In fact, the juvenile court did not base its decision to revoke probation based on this allegation. Therefore, as to the incident occurring at the muffler shop, J.T.B. cannot meet the second prong of the *Strickland* test. In view of this juvenile's extensive delinquency history, there is no indication of a reasonable probability the juvenile court would have imposed a different sentence had counsel objected to this alleged hearsay evidence. From the record, it appears the trial court had already exhausted the lesser alternative sanctions. The trial court aptly observed that J.T.B. had "worn the system out." This point of error is overruled.

### B. Specific Reasons for Sentence

J.T.B. next complains that the court's reasons for committing him to TYC are not sufficiently specific.[9] A modification order can provide for commitment to TYC if "(1) the original disposition was for conduct constituting a felony or multiple misdemeanors, and (2) the court finds the child violated a reasonable and lawful order of the court."[10] *J.P.*, 136 S.W.3d at 630–31; *see* TEX. FAM.

---

[9]The bulk of J.T.B.'s argument on this issue complains the order "is unclear specifically what caused the trial judge to enter the order modifying [J.T.B.'s] probation." We disagree.

[10]In addition to the original felony charge for entering the home of Walter Lee Stockstill with intent to commit theft, the order complained of states there "was also a finding of a Deadly Weapon on the 9th day of June, 2008 when the Respondent entered his plea of True to the allegations of Aggravated Assault with a Deadly Weapon."

CODE ANN. § 54.05(f) (Vernon 2008). The juvenile court "shall specifically state in the order its reasons for modifying the disposition." TEX. FAM. CODE ANN. § 54.05(i) (Vernon 2008). The statutory recitals listed in Section 54.05(m) are not, by themselves, specific enough to meet Section 54.05(i) requirements. *In re J.T.H.*, 779 S.W.2d 954, 959 (Tex. App.—Austin 1989, no writ) (discussing Section 54.04). As long as the record supports the specific findings made by the court, its findings will not be disturbed. *In re S.A.G.*, No. 04-06-00503-CV, 2007 WL 748674, at *2 (Tex. App.—San Antonio Mar. 14, 2007, no pet.) (mem. op.) (citing *In re E.D.*, 127 S.W.3d 860, 864 (Tex. App.—Austin 2004, no pet.)). The violation of one condition of probation is sufficient to support a trial court's order modifying a juvenile's disposition. *Id.* at *3.

In addition to the statutory language and "find[ings] that within the period of probation said child has violated the conditions," the order also stated J.T.B. was "in need of rehabilitation," and modification was required "for the protection of the public and the child." The order also incorporated "Exhibit 1," which stated:

- The child has a history of referrals for violations at school.
- The Department has attempted disposition in the home in the past, and the child continues to commit offenses.
- It does not appear that disposition in the home will have any success in rehabilitating the child.
- The supervision of the parents in the home is not sufficient to prevent the child from his/her admitted gang involvement and repeated offenses.
- The child was previously placed on probation by the Court.
- The child and/or family was previously referred to the following community, court, educational, counseling, or psychological programs: Summer II Program, GPS Monitoring, Intensive Supervision Program, Community Service Restitution, Project Aspect, Why Try, Electronic Monitoring, Prevent Day, Southwest Key RTC and Azleway Boys' Ranch RTC.

11

- The nature of the offense and/or circumstances in the child's home necessitates removal of the child from the home.

We find the order more than sufficient to meet the requirements of Section 54.05(i).

Thus, if some evidence supports these findings, they cannot be disturbed on appeal. The sufficiency of the evidence to support these findings is not challenged in this appeal. In both its oral pronouncement and written order, the juvenile court found that J.T.B. possessed tobacco as a minor, violated curfew, tested positive for marihuana and benzodiapine, and was unsuccessfully discharged from the Summer II Program. Jacksonville City Judge Pete Menefee brought J.T.B.'s court file and testified he had a pending ticket for minor in possession of tobacco in his court. The curfew violation was supported by Kyle Dezern, employee of the Cherokee County Juvenile Probation Department, who testified that J.T.B.'s GPS monitor confirmed violations on the alleged dates. Terri Arnold, program coordinator for the summer program, testified that he only attended for one day and had to be removed from the program due to inappropriate behavior. J.T.B. also admitted he possessed the tobacco, violated curfew, tested positive for benzodiapine, "might have been dirty" for marihuana, and was discharged from the summer program. Additionally, the trial court took judicial notice of the entire clerk's record, which further supports the additional findings made in Exhibit 1. We find no abuse of discretion in the trial court's judgment.

## IV.    CONCLUSION

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:      May 26, 2009
Date Decided:        May 27, 2009