

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00028-CV

_____

IN THE MATTER OF A.T.D.

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. J-2016-016

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

After A.T.D.[1] was placed on juvenile probation, the State filed a motion to modify disposition of probation, alleging that A.T.D. tested positive for THC and was in possession of an electronic device which he used to discuss drug use. The trial court granted the State's motion and committed A.T.D. to the Texas Juvenile Justice Department (TJJD). A.T.D. appealed, maintaining there was legally and factually insufficient evidence to support the trial court's ruling. For the reasons below, we affirm the trial court's judgment.

## I. Standard of Review

A juvenile court has broad discretion to select the appropriate form of detention for juvenile offenders who have been adjudicated as having engaged in delinquent behavior. *See* TEX. FAM. CODE ANN. § 54.04 (West Supp. 2017); *see also In re P.E.C.*, 211 S.W.3d 368, 370 (Tex. App.—San Antonio 2006, no pet.). A trial court's modification of juvenile probation is governed by Section 54.05 of the Texas Family Code. TEX. FAM. CODE ANN. § 54.05 (West Supp. 2017). When a juvenile has previously engaged in delinquent conduct, the trial court may modify the original sentence to commit the juvenile to TJJD if it determines, by a preponderance of the evidence, that the juvenile subsequently violated a reasonable order of the court. TEX. FAM. CODE ANN. § 54.05(f) (West Supp. 2017); *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *In re T.R.S.*, 115 S.W.3d 318, 320–21 (Tex. App.—Texarkana 2003, no pet.).

---

[1]In order to protect the appellant's privacy, we will refer to him by the initials A.T.D., and the adults will be referred to by pseudonyms. *See* TEX. R. APP. P. 9.8.

The decision to modify a juvenile's probation, including the decision to commit him to TJJD, is in the sound discretion of the trial court and can be reversed only on a showing that the trial court abused its discretion. *In re M.A.*, 198 S.W.3d 388, 390–91 (Tex. App.—Texarkana 2006, no pet.). To commit a juvenile to TJJD under these circumstances, the trial court must make the required statutory findings that: (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts were taken to prevent the need to remove the child from the home and make it possible to return to it; and (3) the child did not receive the quality of care and level of support and supervision needed to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i); *In re J.R.C.*, 236 S.W.3d 870, 873 (Tex. App.—Texarkana 2007, no pet.). An abuse of discretion occurs when a trial court orders modification and commitment to TJJD and, in doing so, acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *M.A.*, 198 S.W.3d at 391. No abuse of discretion occurs when a trial court bases its decisions on conflicting evidence. *In re B.N.F.*, 120 S.W.3d 873, 877 (Tex. App.—Fort Worth 2003, no pet.). Likewise, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Id.*

When we review the legal sufficiency of the evidence of a disposition order, we consider "only the evidence and inferences tending to support the findings under attack and set aside the judgment only if there is no evidence of probative force to support the findings." *In re M.D.H.*, 139 S.W.3d 315, 317 (Tex. App.—Fort Worth 2004, pet. denied). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *In re E.K.G.*, 487 S.W.3d 670, 676 (Tex. App.—San Antonio 2016, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex.

3

2005). "In reviewing factual sufficiency of the evidence, we consider and weigh all the evidence in the case, and set aside the judgment and remand for a new trial only where we conclude the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re A.E.E.*, 89 S.W.3d 250, 256 (Tex. App.—Texarkana 2002, no pet.) (citing *In re J.S.*, 933 S.W.2d 370, 372 (Tex. App.—San Antonio 1999, no pet.)).

## II.    Analysis

### A.    Procedural History

On October 20, 2016, the State filed a petition regarding a child engaged in delinquent conduct, alleging that A.T.D. twice committed the offense of indecency with a child and also committed the offense of burglary. On October 24, 2016, the State filed a motion for detention of a juvenile, asking the trial court to detain A.T.D. for a period of fifteen days and alleging that A.T.D. was in need of adult supervision. A.T.D. waived a detention hearing on the State's motion, and the trial court entered its order of detention on October 25, 2016.

On November 7, 2016, A.T.D. was released from detention, and the trial court entered an order setting out the conditions of his release. The trial court ordered, among other things, that A.T.D. refrain from committing a criminal offense, avoid injurious habits, avoid persons or places of disreputable character, attend school, refrain from using the internet unless it was at school for assignment purposes, and report to his juvenile probation officer in person two times a week.

On December 13, 2016, the State filed an amended petition regarding a child engaged in delinquent conduct by adding to its original petition that, on June 7, 2016, A.T.D. committed the offense of injury to a child when he "slamm[ed]" J.A., a child fourteen years of age or younger,

4

onto the couch and attempted to insert an object into his anus. On that same day, A.T.D. waived his right to a trial and disposition hearing and then entered into a stipulation of evidence, admitting that he had committed the alleged offense. After the trial court adjudicated A.T.D. guilty, and pursuant to a plea bargain, A.T.D. agreed to a determinate sentence of five years' commitment to the TJJD, with the possibility that he could be transferred to the Texas Department of Criminal Justice at the appropriate time. The trial court suspended A.T.D.'s sentence and placed him on juvenile probation.

Pursuant to the terms of A.T.D.'s probation, A.T.D. was ordered to reside with his aunt, Jennifer, but to "remain[] in the care of" his mother, Peggy. The trial court also ordered A.T.D. to comply with at least thirty other conditions in order to remain on probation. Notably, A.T.D. was "not allowed to have a *Facebook, Twitter, Instagram, Snap Chat* or other *Social Networking* page without the Probation Department's permission." In addition, A.T.D. was prohibited from having cell phone or computer access without his probation officer's supervision or control. The trial court also prohibited A.T.D. from possessing or consuming illegal drugs or alcohol.

On January 5, 2017, the trial court issued a directive to apprehend A.T.D., which was based on Jennifer's refusal to continue to supervise him. On June 22, 2017, the trial court issued a second directive to apprehend due to A.T.D.'s continued possession of a cell phone and use of social media. On June 23, 2017, the trial court modified A.T.D.'s conditions of probation, which included additional restrictions on his use of cell phones and computers, and placed him under the supervision of his grandparents, Lewis and Felicia. The trial court issued a third directive to apprehend on July 11, 2017, based on the State's allegations that A.T.D. had continued to violate

5

the conditions of probation. Shortly thereafter, the trial court modified A.T.D.'s conditions by restricting his use of "any type of electronic [device] at any time unless it is for school purposes . . . mean[ing] no cell phone, computer, or iPod, ect. [sic]."

On March 12, 2018, the State filed a petition to modify disposition of probation alleging that A.T.D. violated the terms and conditions of his probation (1) by testing positive for THC on a drug test administered by the juvenile probation department and (2) by being in possession of an electronic device, namely, a tablet capable of internet access. In its petition, the State also averred that A.T.D. had been removed from Peggy's home and Jennifer's home and was currently placed in the care of his grandparents, Lewis and Felicia. The State asked the trial court to terminate A.T.D.'s probation and to commit him to the TJJD. According to the State, revoking A.T.D.'s probation was in his best interest.

### B.    The Hearing on the State's Motion to Modify Disposition of Probation

A.T.D. pled not true to the allegations contained in the State's motion, and the trial court proceeded with a hearing. A.T.D.'s grandfather, Lewis, testified that A.T.D. was currently residing in his home and had been doing so since June 2017. Lewis stated that, when A.T.D. first moved into the home, they "were pretty much under house arrest." Lewis explained that they were required to monitor A.T.D. all the time. He continued, "And then we got it to where he was -- he was visiting his mother, and then it went downhill from there." Lewis stated that, when A.T.D. went to visit Peggy on the weekends, it "g[a]ve [A.T.D] a break . . . and g[a]ve [them] a break." He continued, "But [the probation officer] said since he failed the drug test, he's pretty much back under house arrest, and we don't really want to be under house arrest with him."

6

Lewis also stated that he believed A.T.D. had tested positive for the use of marihuana. When Lewis was asked if he wanted A.T.D. to return home with him, he responded, "Not really." Lewis said that, if he had no choice, he "guess[ed]" he could continue to be responsible for A.T.D. In Lewis' opinion, A.T.D. should "finish out his probation with his mother." Lewis stated that he would be amenable to taking responsibility for A.T.D. if he and his wife could have some relief on the weekends. He then explained that, if that were to happen, it would require A.T.D. to be placed under his mother's supervision when they were away from home. When asked why that would require A.T.D.'s mother to supervise him, Lewis explained, "Well, to be honest with you, nobody else will take the responsibility[.]"

Ashley Speed, A.T.D.'s juvenile probation officer, testified that A.T.D. had tested positive for the use of a controlled substance on two occasions. According to Speed, A.T.D. was no longer allowed to live with Jennifer because he tested positive for drug use and because he was disrespectful and refused to abide by the conditions of his probation. Speed explained that A.T.D. had violated the conditions of his probation on numerous occasions by being in possession of an electronic device. When asked whether she believed TJJD would be an appropriate option for A.T.D., Speed responded,

> Due to the fact that he's only -- would only be there, you know, maybe four months at the max, I don't know how much he would benefit from that. As far as them being able to assess him and have an opinion whenever it comes down to transferring of him going to the adult system versus prison, I don't know how well of an answer that they could give off of that short of a time period, being able to work with him.

In Speed's opinion, it would be in A.T.D.'s best interest to continue living with his grandparents. She also stated, however, that she was concerned A.T.D. would "continue to have

7

incidents" while living with his grandparents and that his grandparents would eventually refuse to have A.T.D. in their home. According to Speed, A.T.D.'s mother's home would not be an appropriate setting for him. "It's just her lack of backbone with her children." Speed also stated that A.T.D. and his sibling "squabble[ed] with one another," which resulted in the police having to come to the home.

Speed explained that there were no other placements or programs available to A.T.D. because of his age. Speed conceded that A.T.D. had completed his community service hours and was still enrolled in school. When asked if there were any other options for A.T.D., Speed stated that it might be possible for him to do additional community service work. She noted, however, that the main concern was finding an appropriate individual to supervise him, stating, "I've asked about other family members, if there's anyone else who might be willing to supervise him these last five months, but I have not been given any other family members' information or possibilities."

Peggy testified that she would be willing to give her support or be a placement for A.T.D. Peggy stated, "I'll do whatever I can do." She explained that she could re-arrange her current work hours and that her parents could assist in supervising A.T.D. According to Peggy, A.T.D. had done well on probation "compared to what other people do." It was her opinion that A.T.D. had "messed up little things that ya'll think are petty-little things. And that's the only thing he's messed up on, he's failed two drug tests." Peggy admitted that she was at home the day A.T.D. had been smoking marihuana. When asked whether A.T.D. should have access to the internet, she responded, "Why not? . . . . He's a kid like everybody else is."

8

After closing arguments, the State asked the trial court to terminate A.T.D.'s juvenile probation and to commit him to the TJJD. A.T.D. asked the court to allow him to remain on probation and to order him to complete additional community service hours or to participate in counseling. The trial court granted the State's motion, revoked A.T.D.'s probation, and sentenced him to TJJD. This appeal followed.

## C.    Discussion

In its disposition order, the trial court found that A.T.D. had violated the terms and conditions of his probation[2] and that it was in the best interest of A.T.D. to be placed outside of his home. In addition, the trial court made the following findings: (1) his parents lacked the ability to provide him with a suitable home environment; (2) there was a lack of adequate placement to address his needs; (3) reasonable efforts had been made to prevent or eliminate the need for A.T.D. to be removed from the home; (4) A.T.D.'s grandparents could not provide the quality of care and level of support and supervision that he needed to meet the conditions of his probation; (5) A.T.D. had a history of aggressive behavior; (6) local resources available to the court were inadequate to properly rehabilitate A.T.D; and (7) the nature of the offense warranted A.T.D.'s transfer to a more restrictive environment.

A.T.D. does not dispute that he violated the terms of his probation. Rather, A.T.D maintains that the evidence was legally and factually insufficient to demonstrate that (1) placement in TJJD was in his best interest, (2) reasonable efforts were made to prevent or eliminate the need

---

[2]On April 16, 2018, the trial court entered a modified disposition order of commitment to TJJD, stating further that A.T.D. had violated the conditions of his probation by testing positive for THC on a drug test and by having in his possession an electronic device capable of internet access, which he had used to make contact with others regarding drug use.

for his removal from his home, and (3) his grandparents could not provide the quality of care and level of support and supervision he needed to meet the conditions of his probation.

We are unable to conclude that the trial court acted arbitrarily or without reference to guiding principles when it revoked A.T.D.'s probation and committed him to TJJD. First, the trial court was presented with evidence that A.T.D. had been adjudicated of a serious offense, that is, injury to a child. The record also showed that the trial court had, on a number of occasions, sought available alternatives for A.T.D. and had given him multiple opportunities to successfully complete his probation. Other than increasing the amount of A.T.D.'s community service work, the evidence showed that there were no additional programs or resources available to the court to assist with A.T.D.'s rehabilitation. Despite repeated efforts on the part of the trial court, A.T.D. showed a repeated disregard for authority and continued to violate his conditions of probation by using illegal drugs and by being in possession of an electronic device which he used to discuss, among other inappropriate things, the use of illegal drugs.

In support of his position, however, A.T.D. emphasizes Speed's testimony wherein she stated that she believed it would be in A.T.D.'s best interest to remain with his grandparents. Notwithstanding her statement, there was a substantial amount of evidence to demonstrate otherwise, including A.T.D.'s grandfather's own testimony regarding the issue. The evidence showed that A.T.D.'s grandparents were unable and virtually unwilling to continue intensive supervision of A.T.D without the assistance of A.T.D.'s mother, Peggy. Under Peggy's supervision, not only had A.T.D. used marihuana, he had done so while she was in the home with him.

Additionally, the record reflects that, despite his ongoing issues, Peggy believed A.T.D. had done well on probation "compared to what other people [do]." Peggy's testimony demonstrated that she had a limited insight into her son's issues, and it also showed that she lacked the ability to provide the quality of care and level of support and supervision that A.T.D. required. Finally, the evidence demonstrated that the result would be the same regardless of whether Peggy's role was that of A.T.D.'s primary caretaker or merely that of assisting A.T.D.'s grandparents with the attendant responsibilities.

Moreover, before being placed with his grandparents, A.T.D. had been placed with Jennifer, his aunt. Because A.T.D. would not abide by the conditions of his probation, Jennifer refused to continue to supervise him or to allow him to reside with her. In addition, Lewis testified that he knew of no one else who would be willing and able to assume responsibility for A.T.D. while he was on probation. Thus, the record shows that less restrictive placement options were unavailable. Contrary to A.T.D.'s position, the evidence was legally and factually sufficient to support the trial court's findings underlying its disposition order.

Because the trial court did not abuse its discretion in committing A.T.D. to TJJD, we overrule his point of error.

11

## III.     Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     August 30, 2018
Date Decided:       September 11, 2018