236 S.W.3d 870 (2007)
In the Matter of J.R.C.
No. 06-07-00018-CV.
Court of Appeals of Texas, Texarkana.
Submitted August 2, 2007.
Decided October 11, 2007.
*871 Dean M. Swanda, Swanda & Swanda, PC, Arlington, for appellant.
David M. Curl, Anne Swenson, Tarrant County Dist. Atty's Office, Fort Worth, for appellee.
Before MORRISS, C.J., CARTER and MOSELEY, JJ.

*872 OPINION
Opinion by Chief Justice MORRISS.
J.R.C., a juvenile, had previously been found to have engaged in delinquent conductindecency with a child by contact and had been placed on probation. Later, the trial court found that J.R.C. had violated the terms of his probation, but the court declined to revoke his probation, instead placing him in the custody of the Brookhaven Youth Ranch with directions to successfully complete the residential placement. Approximately four months after being placed at Brookhaven, J.R.C. was discharged from that facility amid reports that he had not progressed in his anger and impulse control and had exhibited behavioral problems at the on-campus school there. Ultimately, on the State's motion to modify disposition, J.R.C. was sent to the Texas Youth Commission (TYC) for an indeterminate commitment.
Appealing that modification, J.R.C. contends only that the trial court abused its discretion by committing him to the TYC rather than Tarrant County's Specialized Treatment for Offenders Program (STOP).[1] We affirm the disposition by the trial court.
J.R.C. asserts that STOP was an available option; that there was no showing that public safety was better served by sending him to the TYC instead; that there was no showing that the TYC could better rehabilitate him than STOP; and that there was a showing that his mother could more easily participate if he were sent to STOP. J.R.C. also cites evidence that his first counselor at Brookhaven discontinued her services, resulting in J.R.C.'s "discharge" because of scheduling problems,[2] and that, before J.R.C. was sent to Brookhaven, a second counselor, Parnell Ryan, had strongly recommended outpatient treatment for J.R.C.J.R.C. adds that there was evidence that his time at Brookhaven was marked by a number of assaults on him by fellow students and that fellow students urinated or vomited on items belonging to him. J.R.C.'s family members all testified that they wanted him to go to the local STOP program and that committing him to the TYC would make things only worse. J.R.C. argues that the trial court had inadequate evidence to justify sending him to the TYC rather than using one of the other options.
The State responds by suggesting that it had no duty to show that the TYC commitment was superior to STOP and that we should not in any fashion consider whether the trial court failed to exhaust other alternatives to a TYC placement. The State would have us focus solely on whether the court abused its discretion by removing J.R.C. from the home. In other words, the State takes the position that we cannot review the nature of the placement (after removal), but only whether the court had evidence to justify removing J.R.C. Under the State's formulation, we would look at only whether the State met the three-pronged test used to determine whether a court is authorized to remove a juvenile from his or her home. See TEX. FAM.CODE ANN. § 54.05(m)(1)(A), (B), and (C) (Vernon Supp.2006).[3] The ultimate conclusion *873 of the State's position is that trial courts can, without considering any alternatives, automatically choose to place all juvenile defendants into the TYC, so long as they have been properly removed from their homes. We disagree.
The statutes do not require commitment to the TYC for every probation violation; but they suggest that such placement is for serious offenders. In re J.P., 136 S.W.3d 629, 632 (Tex.2004). The TYC is the most severe form of incarceration in the juvenile justice system, and it is neither reasonable nor appropriate in the area of juvenile law to use the final, most restrictive form of detention in all situations. Id. at 634 (Schneider, J., concurring).
Trial courts have discretion in this context, unlike regular criminal convictions, to select the appropriate form of detention for juvenile offenders, and should exercise that discretion based on the facts of each case. When a trial court exercises discretion, appellate courts have the authority, and the duty, to review its action. Schroeder v. Brandon, 141 Tex. 319, 172 S.W.2d 488, 491 (1943); Word v. United States Coffee & Tea Co., 324 S.W.2d 258, 262 (Tex.Civ.App.-Amarillo 1959, writ ref'd n.r.e.); Smith's Heirs v. Hirsch, 197 S.W. 754, 765 (Tex.Civ.App.-Beaumont 1917, writ ref'd).
The State argues that In re K.K.D., No. 03-03-00702-CV, 2004 WL 1792399, 2004 Tex.App. LEXIS 7166 (Tex.App.-Austin Aug. 12, 2004, pet. ref'd) (mem. op.), provides the proper standard of review. In that case, the Austin court of appeals recognized that the Texas Family Code does not require the State to investigate every possible alternative to TYC commitment. See TEX. FAM.CODE ANN. § 54.04(i)(1) (Vernon Supp.2006). K.K.D. did not, however, hold that an argument about proper placement could not be raised or that evidence as to proper placement was irrelevant to the issues that were raised.
In fact, K.K.D. held that, once a juvenile court has properly made the findings required by Section 54.04(i)(1), to place a juvenile on probation outside his or her home or to commit the juvenile to TYC, the court then has broad discretion to determine the suitable disposition of the juvenile. See K.K.D., 2004 WL 1792399, at *3, 2004 Tex.App. LEXIS 7166, at *5 (citing In re C.C., 13 S.W.3d 854, 859 (Tex. App.-Austin 2000, no pet.)). The statutorily required findings are stated in the following way:
(i) If the court places the child on probation outside the child's home or commits the child to the Texas Youth Commission, the court:
(1) shall include in its order its determination that:
(A) it is in the child's best interests to be placed outside the child's home;
(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. . . .
TEX. FAM.CODE ANN. § 54.04(i)(1). In this case, those findings were explicitly made in the order of commitment and have not been challenged on appeal. Thus, the trial court had broad discretion in choosing the *874 disposition for J.R.C. See C.C., 13 S.W.3d at 859.
The State also directs our attention to In re G.L.C.P., No. 02-06-00293-CV, 2007 WL 1377733, 2007 Tex.App. LEXIS 3621 (Tex.App.-Fort Worth May 10, 2007, no pet.), and In re J.L.C., No. 2-06-00252-CV, 2007 WL 1168474, at *6, 2007 Tex. App. LEXIS 3063, at *9 (Tex.App.-Fort Worth Apr. 19, 2007, no pet.). In G.L.C.P., the Fort Worth appellate court addressed a similar argument while determining whether commitment to the TYC was an available disposition. That court determined that the TYC was an available disposition and, after noting that the record showed that prior efforts to keep G.L.C.P. at home had failed, concluded that it was in his best interest to be placed outside the home and that the trial court had not abused its discretion by committing him to the TYC.
In J.L.C., the Fort Worth court refused to conclude that the trial court abused its discretion by finding that commitment was a more appropriate disposition in the absence of any testimony to show why the "Family Preservation" aspect of Tarrant County Juvenile Services would be a viable option. J.L.C., 2007 WL 1168474, at *6, 2007 Tex.App. LEXIS 3063, at *9.
The San Antonio court of appeals was faced with a case having a different posture, in In re S.G., No. 04-04-00475-CV, 2005 WL 763277, at *2, 2005 Tex.App. LEXIS 2560, at *5 (Tex.App.-San Antonio Apr. 6, 2005, no pet.). In that modification case, the State's witness admitted (and the trial court found) that many local remedies had been exhausted and suggested it was time for the State, rather than the county, to begin paying for S.G.'s upkeep. The trial court modified the disposition from probation and committed her to the TYC. The appellate court found that the stated reason to send the juvenile to the TYCmaking the State pay to care for S.G.did not conform to the stated goals of the juvenile justice code and, thus, the trial court had no proper reason to commit S.G. to the TYC. Id.[4]
The El Paso court of appeals also addressed a similar issue in a modification case in In re E.R.L., 109 S.W.3d 123 (Tex. App.-El Paso 2003, no pet.). The court considered itself "informed" by the required findings set out in Section 54.04(i), and then looked to see if there was evidence to support the decision of the trial court to place the juvenile in a program that was not the least restrictive available. The appellate court ultimately concluded that there was evidence supporting the trial court's decision to send E.R.L. to the TYC, even though other options were available.
Neither the State's premise nor its conclusion are supported by the cited cases. The State's comment that it did not have a duty to show that a TYC commitment was a superior result is correct. But that premise does not lead to the conclusion that evidence of the nature or existence of alternatives to TYC commitment is irrelevant, or that such a determination is effectively nonreviewable on appeal. None of the cases cited by the State explicitly takes the position argued by the State in this appeal, and we reject the proposition that *875 the choice of disposition of a juvenile may never be reviewed by an appellate court that only the decision to commit may be reviewed.
Modifying a juvenile's probation is a decision which is within the sound discretion of the trial court; such a decision can be reversed only on a finding that the trial court abused that discretion. TEX. FAM.CODE ANN. § 54.05 (Vernon Supp. 2006); In re J.P., 136 S.W.3d 629, 632 (Tex.2004); In re M.A., 198 S.W.3d 388, 390-91 (Tex.App.-Texarkana 2006, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. M.A., 198 S.W.3d at 391. A trial court does not abuse its discretion if some evidence supports the decision. J.L.C., 2007 WL 1168474, at *6, 2007 Tex.App. LEXIS 3063, at *9; see Furr's Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 379 (Tex.2001); see also Estrello v. Elboar, 965 S.W.2d 754, 758 (Tex.App.-Fort Worth 1998, no pet.); Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied). In other words, whether there is factually sufficient evidence to support the trial court's findings is a relevant consideration in determining whether the trial court abused its discretion. In re C.J.H., 79 S.W.3d 698, 702 (Tex.App.-Fort Worth 2002, no pet.); see Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991); Tex. Dep't of Health v. Buckner, 950 S.W.2d 216, 218 (Tex.App.-Fort Worth 1997, no writ).
We must review the sole appellate issue in light of the discretionary authority of the trial court. A trial court is not required to exhaust all possible alternatives before sending a juvenile to the TYC. M.A., 198 S.W.3d at 391. The Texas Family Code permits a trial court to decline third and fourth chances to a juvenile who has abused a second chance. J.P., 136 S.W.3d at 633.
This record contains some evidence about the nature of the STOP program, and some evidence about its potential usefulness in rehabilitating J.R.C. There was also evidence, however, that J.R.C. had failed to complete one type of local program successfully, and the managers of that program indicated that he had not altered his behavior. There was evidence that J.R.C. was on the receiving end of the hostility of other students at Brook-haven because he provoked them. There is nothing shown by this record that would require the trial court to commit J.R.C. to STOP rather than to the TYC. The evidence was thus not such as to require us to conclude that the trial court abused its discretion by deciding to commit J.R.C. to the TYC.
We affirm the judgment.
NOTES
[1] STOP provides a residential environment option for certain male juveniles who have been adjudicated for sexual conduct and have been ordered to participate in residential treatment before they return home.
[2] The document involvedas the witness explainedincorrectly stated that his counseling with Debra Moore had ended unsuccessfully, rather than simply noting that there was a change in counselor.
[3] As support for its argument, the State analogizes to the procedure followed in adult convictions. It argues that appellate courts would not review whether a defendant was sentenced to a particular type of imprisonment, or in a particular type of facility. Thus, the State posits, the particular disposition made in a juvenile case should not be reviewable.
[4] See In re L.D., No. 12-06-00193-CV, 2007 WL 677828, 2007 Tex.App. LEXIS 1714 (Tex. App.-Tyler Mar. 7, 2007, no pet.). In that appeal, the monetary problem was also raised, but the trial court had made explicit findings that the child was a danger to the public, and it was apparent that the court had considered the progressive sanction guidelines found in Sections 59.005-59.015 of the Texas Family Code, and decided that deviating from those guidelines and committing L.D. to the TYC was appropriate. Thus, the appellate court concluded that the trial court did not abuse its discretion by so deciding.