

Court Of Appeals

Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★     ★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00556-CV

## IN THE MATTER OF J.A.

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2009JUV01956
Honorable Laura Parker, Judge Presiding[1]

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed: March 10, 2010

AFFIRMED

The sole issue presented in this appeal is whether the juvenile court abused its discretion in committing J.A. to the Texas Youth Commission ("TYC"). J.A. contends the record indicates that probation, either in the home or in placement, would have been a more appropriate disposition. We affirm the juvenile court's order of disposition.

### BACKGROUND

The complainant, C.G., reported that he was walking with a friend on April 4, 2009, when he observed J.A. with three other individuals. C.G. and his friend walked down a drainage ditch to

---

[1] Referee Lisa K. Jarrett presided over the hearing and made recommendations to the Honorable Laura Parker who signed the orders in the underlying cause.

avoid J.A. because they knew J.A. caused trouble. J.A. and the others followed them and pushed C.G. to the ground. J.A. and the others started punching and kicking C.G. The officer responding to the complaint observed physical injuries to C.G.'s eye and arm, and photographs of the injuries are included in the record. J.A. and the others removed C.G.'s shoes and took the shoes and C.G.'s backpack. J.A. and the others were yelling "We are BDTs, don't fuck with us." C.G. reported the BDT stands for Brown Down Thugs, a gang, and J.A. and the others were wearing brown bandanas around their neck. C.G. knew J.A. because he used to go to C.G.'s school before J.A. was sent to alternative school.

J.A. pled true to the offense of robbery without a plea bargain agreement. At the disposition hearing, the Bexar County Juvenile Probation Department's Pre-Disposition Report was admitted into evidence without objection. J.A. was previously referred to the juvenile probation department for a charge of arson on December 11, 2008. The charge stemmed from an allegation that J.A. had started a fire in a dumpster. Although J.A. was positively identified at the scene as the suspect, the charge was rejected on April 28, 2009. J.A. also was previously referred for expulsion on January 8, 2009.

J.A. reported that he smoked marijuana once a month. J.A. had a history of disruptive behavior at school. From September 2006 until December 2008, J.A. had thirty-nine disciplinary referrals. The referrals consisted of violations of classroom and school rules, offensive physical contact, disruptive behavior in the classroom, and persistent misbehavior. As a result of his persistent misbehavior, J.A. was sent to alternative school. J.A. was subsequently expelled by the school district and sent to the Bexar County Juvenile Justice Academy. Although J.A. denied being

associated with gangs when questioned by the probation officer, J.A. previously admitted to being affiliated with "brown" to an officer of the school district's police department.

Although the report noted that J.A. has a stable home environment, J.A.'s mother reported she had issues with J.A.'s behavior in the past and stated J.A. can be disrespectful and defiant. J.A.'s step-father reported he had told J.A. for years that his attitude and behavior were eventually going to get him in trouble.

The State recommended commitment to TYC. The probation officer also recommended TYC; however, seven of the ten individuals on the juvenile probation department's staffing committee recommended probation with participation in GANG ISP and the KAPS program. The probation officer reported that his recommendation was based on J.A.'s persistent misbehavior at home and at school and the best interest of the community. The probation officer also testified that his recommendation was based in large part on the nature of the offense because a person should not be afraid to walk down the street.

J.A.'s attorney asserted that J.A. was diagnosed with depression disorder and qualified for special education. J.A.'s attorney also asserted that J.A. had not received any prior resources and requested that J.A. be placed on probation.

The juvenile court noted that she trusted the probation officer's judgment. The juvenile court found reasonable efforts were made to prevent or eliminate the need for J.A.'s removal from the home, but the child, in the child's home, could not be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. The juvenile court also found that commitment to TYC was the appropriate disposition due to J.A.'s behavior problems and inadequate supervision at home.

DISCUSSION

In order for a juvenile to be committed to TYC, the juvenile court must find that: (1) placement outside the home is in the juvenile's best interests; (2) reasonable efforts were made to prevent or eliminate the need for removal from the home; and (3) the juvenile, in the juvenile's home, cannot be provided the quality of care and level of support and supervision the juvenile needs to meet the conditions of probation. TEX. FAM. CODE ANN. § 54.04(i)(1) (Vernon Supp. 2009). A trial court's order committing a juvenile to TYC "must be reviewed under an abuse of discretion standard divorced from legal and factual sufficiency standards." *In re K.T.*, 107 S.W.3d 65, 67 (Tex. App.—San Antonio 2003, no pet.). "[T]he abuse of discretion standard requires that we 'view the evidence in the light most favorable to the trial court's ruling,' affording almost total deference to findings of historical fact that are supported by the record." *In re K.T.*, 107 S.W.3d at 75 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "However, when the resolution of the factual issue does not turn upon an evaluation of credibility and demeanor, we review the trial court's determination of the applicable law, as well as its application to the appropriate law to the facts it has found, de novo." *Id.*

In his brief, J.A. contends that the juvenile court abused its discretion in not placing him on probation, noting he had no prior juvenile adjudications and describing "many of [the thirty-nine school disciplinary] infractions to be rather minor." A trial court, however, is not required to exhaust all possible alternatives before sending a juvenile to TYC. *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.). Although J.A. may not have had any prior juvenile adjudications, he was first given the chance to attend alternative school as a result of his disciplinary problems, but was subsequently expelled by the school district and required to attend the Bexar County Juvenile

Justice Academy. Although J.A. seeks to describe his disciplinary referrals as minor infractions, J.A. was referred numerous times for "disrespectful/profanity" and a few times for "insubordination," which is consistent with J.A.'s mother describing him as disrespectful and defiant in the home. In addition, J.A. had multiple referrals for participating in gang activity, two referrals for offensive verbal/physical conduct, and one referral for scuffling/aggressive physical conduct, which the juvenile court could have believed were not "minor" infractions. Moreover, even if some of the infractions in isolation may appear to be minor, they must be considered in the context of J.A. having received thirty-nine referrals in just over a two-year period. Finally, the juvenile court also had to consider the offense in which J.A. engaged, i.e., attacking an individual who was simply walking down the street, the relation of the offense to J.A.'s gang involvement, and J.A.'s admitted on-going use of marijuana. Based on this evidence, we hold the juvenile court did not abuse its discretion in committing J.A. to TYC.

## CONCLUSION

The juvenile court's order is affirmed.

Catherine Stone, Chief Justice